```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
PATRICK BRENDAN SPILLANE and DEBRA
SPILLANE aka DEBORAH SPILLANE,

                            Plaintiffs,

            -against-

NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS AND JOINERS OF AMERICA,
NEW YORK CITY DISTRICT COUNCIL OF
CARPENTERS PENSION FUND, NEW YORK
CITY DISTRICT COUNCIL OF CARPENTERS
WELFARE FUND, JOSEPH A. GEIGER as
TRUSTEE, EDDIE McWILLIAMS, and
KRISTIN O'BRIEN as EXECUTIVE
DIRECTOR OF THE NEW YORK CITY
DISTRICT COUNCIL OF CARPENTERS
BENEFIT FUNDS,
                            Defendants.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:  1/3/2023

21 Civ. 8016 (AT)

**ORDER**

ANALISA TORRES, District Judge:

Plaintiffs Patrick Brendan Spillane ("Spillane") and Debra Spillane a/k/a Deborah Spillane ("Debra Spillane") bring this action against Defendants New York City District Council of Carpenters Pension Fund (the "Pension Fund"), New York City District Council of Carpenters Welfare Fund (the "Welfare Fund") (collectively, the "Funds"), Joseph A. Geiger as Trustee of the Funds, Kristin O'Brien as Executive Director of the Funds (together with the Funds and Geiger, the "Fund Defendants"), New York City District Council of Carpenters and Joiners of America (the "Union"), and the Union's Director of Area Standards Eddie McWilliams (together with the Union, the "Union Defendants"), alleging that, following a Union trial where Spillane was found guilty of "working as a foreman for a non-union contractor," the Funds "stripp[ed] [P]laintiffs of pension benefits and health insurance," and "[Spillane] was forced to quit his [non-union] job." Am. Compl. ¶¶ 27, 29–30, 32, ECF No. 17. Plaintiffs bring causes of action for denial of benefits under the Employee Retirement Income Security Act ("ERISA")

§ 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), and breach of fiduciary duty under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3); and Spillane[1] brings causes of action for violations of the Labor-Management Reporting and Disclosure Act ("LMRDA") under 29 U.S.C. §§ 411(a), 412, and 529 (the "LMRDA Claims"), and prima facie tort. Am. Compl. ¶¶ 131–85. Plaintiffs seek damages, *see, e.g.*, *id.* at 31, and equitable relief, *see, e.g.*, *id.* ¶¶ 155, 162.

Defendants move to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 36, 39. Plaintiffs move for leave to file a second amended complaint. ECF No. 64. For the reasons stated below, the Fund Defendants' motion to dismiss is GRANTED, the Union Defendants' motion to dismiss is GRANTED in part and DENIED in part, and Plaintiffs' motion for leave to amend is DENIED.

## BACKGROUND[2]

Spillane is a retired member of the Union.[3] Am. Compl. ¶ 6. The Pension Fund "controls and manages an [ERISA]-covered pension plan for the benefit of retired [Union] carpenters." *Id.* ¶ 4. The Welfare Fund "controls and manages ERISA-covered health insurance plans for the benefit of retired [Union] carpenters and dependent family members." *Id.* ¶ 5. Spillane is a participant in the Funds' plans, and his wife, Debra Spillane, is a beneficiary under

---

[1] By letter dated January 29, 2022, Plaintiffs advised the Court that its claims against the Union Defendants "are only brought on behalf of [Spillane]." ECF No. 29 at 1.
[2] The following facts are taken from the complaint and "are presumed to be true for purposes of considering a motion to dismiss for failure to state a claim." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 398 (2d Cir. 2015).
[3] The Union is a United Brotherhood of Carpenters and Joiners of America ("UBC") regional council, which "consist[s] of nine individual local unions with more than 20,000 members." Am. Compl. ¶ 3. The Union is an unincorporated association with its principal offices located in New York. *Id.* The Union is governed by the UBC constitution. *Id.* ¶ 42.

2

the Funds' plans.[4]  *See id.* ¶¶ 2, 6–7.  Geiger is the Union's Executive Secretary Treasurer and a trustee of the Funds, *see id.* ¶ 8, and O'Brien is the Executive Director of the Funds, *see id.* ¶ 10.

For over thirty-five years, Spillane worked as a foreman for Eurotech Construction Corp. ("Eurotech"), a union employer and signatory to the collective bargaining agreement between the Union and the Association of Wall-Ceiling & Carpentry Industries of New York (the "CBA"). *Id.* ¶¶ 17, 21, 33.  He retired as a foreman in 2016.  *Id.* ¶ 33.  Following Spillane's retirement, Ruairi Duffy hired Spillane as a "project manager" for Anfield Interiors, Inc. ("Anfield"), a non-union construction company that is not a signatory to the CBA.  *Id.* ¶¶ 18, 21.  At Anfield, Spillane "overs[aw] multiple construction projects."  *Id.* ¶ 21; *see also id.* ¶ 36.

Spillane alleges that Eddie McWilliams, the Union's Executive Director and chief of organizing, "concocted a looney conspiracy theory that Anfield was Eurotech's secret alter-ego because of its success in getting construction projects that normally would have gone to Eurotech."  *Id.* ¶¶ 13, 23.  In 2019, the Union began an investigation into Spillane's work with Anfield.  *E.g., id.* ¶¶ 25–26.  On May 2, 2019, Office of the Inspector General investigators Paul Edwards and James Geegan interviewed Spillane "to pressure [him] with false charges to get him 'to spill the beans' to support McWilliams's looney conspiracy theory."  *Id.* ¶ 26; *see also id.* ¶ 71.

Spillane was ultimately "charge[d] . . . [with] violating the [o]bligation under the UBC [c]onstitution, i.e., [by] working as a foreman for a non-union contractor."  *Id.* ¶ 27 (italics omitted).[5]  On May 24, 2019, Spillane received a letter informing him that he would be charged

---

[4] Spillane and his wife reside in New York.  Am. Compl. ¶ 1.
[5] *See also* Am. Compl. ¶ 72 (Spillane was "charge[d] . . . [with] violating the [o]bligation under [§§] 51 and 52 of the UBC [c]onstitution, i.e., [by] working as a 'supervisor' for a non-union contractor." (italics omitted)); *id.* ¶ 73 (a Union charge form dated May 7, 2019, indicated that investigators "confirmed Spillane worked for Anfield since 2017" and that he "told investigators that Anfield offered him a job as Project Manager and he was responsible for Anfield job sites").

3

with violating the UBC constitution and a trial chair would "review[] the charges for facial sufficiency at a '[f]irst [r]eading' on June 13, 2019." *Id.* ¶ 75.

At the June 13, 2019 meeting, which was before Edwards and a trial chair, Spillane was advised that he would be charged and that a trial date would be set. *Id.* ¶¶ 28, 76. The trial chair "represented [a trial] would be held 'in September.'" *Id.* ¶ 28; *see also id.* ¶ 77. Spillane alleges that he "had no problem with the scheduling" because he told them "he already had summer plans." *Id.* ¶ 28; *see also id.* ¶ 77. Spillane also alleges that, "[k]nowing that [he] would not be available, the trial was fast-tracked to July 24[, 2019] and was held *in absentia*" (the "Union Trial"). *Id.* ¶ 29; *see also id.* ¶ 77. At the Union Trial, Edwards called witnesses and introduced documentary evidence. *See, e.g.*, *id.* ¶¶ 82–102. Spillane was found guilty of "working as a carpenter foreman at non-union jobs." *Id.* ¶ 29.

Spillane was informed of the guilty verdict and his expulsion from the Union via a letter dated July 31, 2019. *Id.* ¶ 103. The letter informed Spillane of his right to appeal to UBC within sixty days. *Id.* Spillane mailed his appeal to UBC on September 23, 2019, but the appeal was denied as untimely. *See id.* ¶ 104.

By letters dated January 17, 2020, the Funds informed Plaintiffs that their benefits had been terminated. *Id.* ¶¶ 30, 107, 112. The Pension Fund's letter states:

> We have received information from the [Union] that you have been employed by Anfield . . . since 2017. The information provided to us establishes that you have been supervising and directing carpenters at various locations . . . . Such work falls within the collective bargaining jurisdiction of the [Union], and, thus, is [d]isqualifying [e]mployment under the [r]ules.

*Id.* ¶ 107. The Welfare Fund's letter states:

> We have received information from the [Union] that you have been employed by Anfield . . . since 2017. Anfield is not a [c]ontributing [e]mployer to the [f]und. The information provided to us establishes that you have been supervising and directing carpenters at various locations . . . . Such work for a non-[c]ontributing

>   [e]mployer falls within the trade jurisdiction of the [Union], and thus, is
>   [d]isqualifying [e]mployment[.]

*Id.* ¶ 112.

Plaintiffs commenced an action against Defendants on September 27, 2021. Compl., ECF No. 1. Plaintiffs bring causes of action under ERISA for denial of benefits and breach of fiduciary duty against the Fund Defendants, Am. Compl. ¶¶ 131–62, and Spillane brings causes of action for violations of the LMRDA against the Union Defendants and prima facie tort against McWilliams, *id.* ¶¶ 163–85.

## DISCUSSION

### I.  Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff is not required to provide "detailed factual allegations" in the complaint, but must assert "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Ultimately, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." *Id*. The Court must accept the allegations in the pleadings as true and draw all reasonable inferences in favor of the non-movant. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

5

II.  Analysis

A. Denial of Benefits Under ERISA

Section 502(a)(1)(B) of ERISA authorizes plan participants or beneficiaries to bring a civil action "to recover benefits" improperly withheld or to otherwise enforce "rights under the terms of the plan." 29 U.S.C. 1132(a)(1)(B). A court reviews a denial of benefits claim under § 502(a)(1)(B) *de novo* "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Ocampo v. Bldg. Serv. 32B-J Pension Fund*, 787 F.3d 683, 689–90 (2d Cir. 2015) (citation omitted). "Where the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, [courts] will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." *Id.* at 690 (cleaned up). Under the arbitrary and capricious standard of review, courts "may overturn the plan administrator's denial of benefits only if it is found to be without reason, unsupported by substantial evidence[,] or erroneous as a matter of law." *Id.* (quotation marks and citation omitted). Additionally, "[w]here both the plan administrator and a spurned claimant offer rational, though conflicting, interpretations of plan provisions, the administrator's interpretation must be allowed to control." *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008) (quotation marks and citation omitted).

Plaintiffs argue that the Funds' "denial of benefits violated [P]laintiffs' contractual rights under the [p]lans" such that they "are entitled to relief under ERISA [§] 502(a)(1)(B)." Am. Compl. ¶¶ 158–59. The Fund Defendants contend that Plaintiffs' § 502(a)(1)(B) claims are time-barred because the relevant plans set a limitations period of 365 days. Fund Defs. Mem. at 7–10, ECF No. 38; Fund Defs. Reply at 4–7, ECF No. 53. The Fund Defendants also argue that Plaintiffs fail to state a § 502(a)(1)(B) denial of benefits claim against the Fund Defendants

6

under Rule 12(b)(6). Fund Defs. Mem. at 10–15; Fund Defs. Reply at 7–9. The Court shall address these arguments under the relevant pension plan and the relevant welfare plan.[6]

First, the parties agree that the New York City District Council of Carpenters Pension Plan (the "Pension Plan") and the Pension Fund's Summary Plan Description ("Pension Plan SPD"), attached as exhibits in the Fund Defendants' motion to dismiss papers, are the relevant pension plans. Pension Plan, ECF No. 37-1; Pension Plan SPD, ECF No. 37-2. Under the Pension Plan, "[a]ny action by a [p]articipant, [s]pouse[,] or [b]eneficiary under ERISA [§] 502(a) following an adverse benefit determination on review must be filed within 365 days from the date of notice of the adverse benefit determination." Pension Plan at 72–73. By letter dated January 17, 2020, Plaintiffs received notice of an adverse benefit determination under the Pension Plan. Am. Compl. ¶ 107.

Plaintiffs argue that the Funds' 365-day limitation period is unreasonable. Pls. Fund Opp. at 9–10. A court "must give effect to [a] [p]lan's limitations provision unless [it] determine[s] either that the period is unreasonably short, or that a 'controlling statute' prevents the limitations provision from taking effect." *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 109 (2013) (citation omitted). Other courts in this district have found that limitations provisions that afforded participants less than a year to file suit following a denial of benefits were not unreasonably short. *See, e.g.*, *Park Ave. Aesthetic Surgery, P.C. v. Empire Blue Cross Blue Shield*, No. 19 Civ. 9761, 2021 WL 665045, at *7 (S.D.N.Y. Feb. 19, 2021) (concluding that "nearly ten months" is "not [an] unreasonably short period[] of time within which to file suit"); *Tuminello v. Aetna Life Ins. Co.*, No. 13 Civ. 938, 2014 WL 572367, at *2–3 (S.D.N.Y.

---

[6] The parties agree that the Court can consider the plan documents as integral to the complaint. Pls. Fund Opp. at 4, ECF No. 50; Fund Defs. Reply at 2; *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

Feb. 14, 2014) (finding that nine months to file suit "is not an unreasonably short period of time"); *see also Heimeshoff*, 571 U.S. at 109. Because the Court concludes that the Funds' 365-day limitation period is not unreasonably short, it must give effect to the Pension Plan's limitations provision. Plaintiffs' deadline for filing a lawsuit with respect to their denied benefit claims under the Pension Plan was January 17, 2021. Plaintiffs filed this lawsuit on September 27, 2021. Compl. Plaintiffs' § 502(a)(1)(B) claims against the Fund Defendants under the Pension Plan are, therefore, time-barred.

Second, the parties disagree on the relevant welfare plan. Although Plaintiffs do not attach a welfare plan to their complaint, Plaintiffs and the Fund Defendants offer three documents in their motion to dismiss briefing: (1) the New York City District Council of Carpenters Welfare Fund Summary Plan Description dated March 1, 2015 (the "Welfare Plan SPD"), ECF No. 37-3; (2) the Welfare Fund's 2003 Retiree Welfare Summary Plan Description ("2003 Welfare Plan SPD"), ECF No. 51-2; and (3) the 2003 Welfare Plan SPD with Summaries of Material Modifications ("SMMs") through May 2020 (the "2003 Welfare Plan SPD with SMMs"), ECF No. 54-1. Plaintiffs argue that, because "Spillane was a retired employee at the time of the events at issue," the relevant plan is the 2003 Welfare Plan SPD. Pls. Fund Opp. at 8 (citing Am. Compl. ¶ 6); *see also* 2003 Welfare Plan SPD. Plaintiffs state that "[t]he Funds have presented no evidence that Spillane received a copy of the Welfare Fund[']s master document . . . [a]nd there is no limitations period in the [2003 Welfare Plan SPD]." Pls. Fund Opp. at 8. The Fund Defendants, who attached the Welfare Plan SPD as an exhibit to their motion to dismiss, do not concede that Plaintiffs are covered by the 2003 Welfare Plan SPD. Fund Defs. Reply at 2, 4. However, the Fund Defendants argue that "Plaintiffs' ERISA claims are untimely, regardless of which [w]elfare [p]lan applies," because both plans have a limitations period of 365 days. Fund

8

Defs. Reply at 5; Welfare Plan SPD at 120; 2003 Welfare Plan with SMMs at 215.  At this stage, the Court assumes without deciding that the 2003 Welfare Plan SPD is the relevant welfare plan.[7]

Plaintiffs' denial of benefits claim under the 2003 Welfare Plan SPD fails on the merits.  The parties agree that the 2003 Welfare Plan SPD confers discretionary authority upon the Welfare Fund's trustees.  Am. Compl. ¶ 106; Fund Defs. Mem. at 11; Fund Defs. Reply at 7–9; *see also* 2003 Welfare Plan SPD at 110 ("[T]he [b]oard of [t]rustees [of the Welfare Fund] and other plan fiduciaries . . . have discretionary authority to interpret the terms of the plan and to determine eligibility and entitlement to plan benefits in accordance with the terms of the plan, and to decide any fact related to eligibility for and entitlement to plan benefits.  Any interpretation or determination under such discretionary authority will be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary or capricious.").  Here, the arbitrary and capricious standard applies.  Plaintiffs argue that the Fund Defendants' determination was arbitrary and capricious because they "relied on the July 24, 2019 trial verdict as the sole basis to . . . permanently terminate [P]laintiffs' health care benefits."  Pls. Fund Opp. at 6.  Plaintiffs contend that, because Spillane "did not work for a covered employer []or as a carpenter foreman," the "Welfare Fund[']s provisions limiting him to 40 hours of work per month were inapplicable."  *Id.* at 5–7.[8]

---

[7] Plaintiffs refer to the "Welfare Funds master document," Pls. Fund Opp. at 8, but do not provide further details about that document.  The Welfare Plan SPD "serves as both the Plan document and the Summary Plan Description," ECF No. 37-3 at 1.  Plaintiffs do not allege that they did not receive the 2003 Welfare Plan with SMMs, which specifies that "[a]ny action by a [p]articipant or [b]eneficiary for benefits following a denial of an appeal must be filed within 365 days from the notice of the denial of the appeal."  ECF No. 54-1 at 215.  Because Plaintiffs do not specify whether the "master document" refers to the SMMs, the Court cannot, at this stage, conclude whether the 365-day limitation period in the 2003 Welfare Plan with SMMs is enforceable.  *Cf. Landry v. Met. Life Ins. Co.*, 19 Civ. 3385, 2021 WL 848455, at *7–10 (S.D.N.Y. Mar. 5, 2021).
[8] Plaintiffs appear to refer to definitions in the Pension Plan, not the 2003 Welfare Plan SPD.  Pls. Fund Opp. at 5–7.

9

These allegations do not, however, establish that the Fund Defendants' actions were arbitrary and capricious. The Fund Defendants' interpretation that, after they received information that Spillane worked in disqualifying employment, he was no longer eligible for benefits under the Welfare Plan, is supported by the plain language of the 2003 Welfare Plan SPD and the SMMs defining "disqualifying employment." ECF No. 37-4.[9] Plaintiffs have not alleged facts showing that the denial of benefits under the 2003 Welfare Plan SPD is without reason, unsupported by substantial evidence, or erroneous as a matter of law. *Ocampo*, 787 F.3d at 690; *Celardo v. GNY Auto. Dealers Health & Welfare Trust*, 318 F.3d 142, 146 (2d Cir. 2003). And, even if Plaintiffs' interpretation of the Welfare Plan were rational, under the arbitrary and capricious standard, the Fund Defendants' interpretation controls. *McCauley*, 551 F.3d at 132. Thus, Plaintiffs fail to state a § 502(a)(1)(B) claim against the Fund Defendants under the 2003 Welfare Plan SPD.

Accordingly, the Fund Defendants' motion to dismiss Plaintiffs' § 502(a)(1)(B) claims for failure to state a claim is GRANTED.

B. Breach of Fiduciary Duty Under ERISA

Under § 502(a)(3) of ERISA, a plan participant, beneficiary, or fiduciary can bring a cause of action for breach of fiduciary duty. 29 U.S.C. § 1132(a)(3). "A plaintiff alleging a breach of fiduciary duty under ERISA must show that: (1) the defendant is a fiduciary of the plan, (2) the defendant acted in its capacity as a fiduciary, and (3) the defendant breached a fiduciary duty." *Lardo v. Bldg Serv. 32BJ Pension Fund*, No. 20 Civ. 5047, 2021 WL 4198233, at *6 (S.D.N.Y. Sept. 14, 2021). Plaintiffs bring breach of fiduciary duty claims against Geiger

---

[9] Plaintiffs concede that they received a denial of benefits letter dated January 17, 2020, ECF No. 37-4, which appends an SMM dated September 2014 defining disqualifying employment under the welfare plan, *id.* at 7. *See* Pls. Fund Opp. at 4 (citing Am. Compl. ¶ 112).

10

and O'Brien.  Pls. Fund Opp. at 10.  The complaint does not contain sufficient factual allegations as to Geiger or O'Brien to state a claim of breach of fiduciary duty under ERISA.  The complaint only states O'Brien's position and otherwise refers to Geiger's actions using impermissible "labels and conclusions," *Twombly*, 550 U.S. at 555.  *See, e.g.*, Am. Compl. ¶¶ 10, 140, 145–49.  Plaintiffs' conclusory allegations are insufficient to state a claim.

Accordingly, the Fund Defendants' motion to dismiss Plaintiffs' § 502(a)(3) causes of action for failure to state a claim is GRANTED.

### C.  LMRDA Violations

Spillane alleges that the Union Defendants violated the LMRDA, specifically 29 U.S.C. §§ 411(a), 412, and 529.  Am. Compl. ¶ 19.  Section 412 codifies § 102 of the LMRDA, which confers federal jurisdiction for violations of the LMRDA.  29 U.S.C. § 412 ("Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief[.]").  In addition, because Spillane does not oppose the Union Defendants' arguments with respect to Spillane's LMRDA claim under 29 U.S.C. § 529 in his opposition to the Union Defendants' motion to dismiss, the Court deems that claim abandoned.  *Sullivan v. City of New York*, No. 14 Civ. 1334, 2015 WL 5025296, at *5 (S.D.N.Y. Aug. 25, 2015) (collecting cases).  The Court shall, therefore, address Spillane's claims under LMRDA § 101(a)(5), 29 U.S.C. § 411(a).

Spillane brings claims under LMRDA § 101(a)(5), which provides in relevant part: "No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined . . . unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; [and] (C) afforded a full and fair hearing."  29 U.S.C. § 411(a)(5).  "Section 101(a)(5) of the LMRDA does not require that union disciplinary hearings incorporate

11

the specific protections associated with judicial proceedings, including the right to be represented by counsel and the technical rules of pleading, procedure, and evidence." *Piacente v. Int'l Union of Bricklayers & Allied Craftworkers*, No. 11 Civ. 1458, 2015 WL 5730095, at *14 (S.D.N.Y. Sept. 30, 2015) (quotation marks and citation omitted); *see also United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 385 (2d Cir. 2001) ("Not all of the due process protections available in the federal courts apply to union disciplinary proceedings.").

Spillane argues that LMRDA § 101(a)(5) "demands that union proceedings adhere to the basic principles of due process," and that "[t]he penalties assessed against Spillane . . . scream out for federal court review of the sufficiency of evidence presented at [the Union] [T]rial." Pls. Union Opp. at 4, ECF No. 48; *see also* Am. Compl. ¶ 164 ("LM[RD]A requires a full and fair hearing, incorporating traditional concepts of due process."). Spillane contends that: (1) the charge against him "was not specific enough to inform him of the offense he had committed" and "did not inform [him] of the factual basis of the charges against him"; (2) the Union Trial "was scheduled for a time when it was known he would be away"; and (3) he was not afforded a full and fair hearing. Pls. Union Opp. at 5–13.

The Court determines that these claims must also be dismissed. First, LMRDA § 101(a)(5)(A) requires that charges be "specific enough to inform the accused member of the offense that he has allegedly committed." *Int'l Bhd. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers & Helpers, AFL-CIO v. Hardeman*, 401 U.S. 233, 245 (1971). The notice should inform the accused member "at a minimum . . . of the nature of the offense, the circumstances surrounding the alleged infraction and, as nearly as may reasonably be ascertained, the time and place of the occurrence." *Piacente*, 2015 WL 5730095, at *12 (citation and alteration omitted). Spillane alleges he was charged with "violating the [o]bligation under

the UBC [c]onstitution, i.e., [for] working as a foreman for a non-union contractor" "since 2017." Am. Compl. ¶¶ 27, 73 (alterations omitted); *see also id.* ¶¶ 72–74 (describing the UBC constitution provisions Spillane was alleged to have violated and the work he told investigators he did for Anfield); ECF No. 49-4.[10]  That is enough.  Spillane's arguments to the contrary are unavailing.

Second, the allegations in the complaint do not support a claim that Spillane was not given a reasonable time to prepare his defense under LMRDA § 101(a)(5)(B).  Spillane alleges he was "advis[ed] . . . that he would be charged" in May and June 2019, that he was "informed . . . that a trial would be held 'in September,'" that he "had travel plans," and that "the trial was fast-tracked to July 24[, 2019] and was held *in absentia*." Am. Compl. ¶¶ 29, 76–77.  The allegations that the Union Trial was "fast-tracked" from September to late July are conclusory.  Spillane does not allege that he was not on notice of the rescheduled trial date.  Further, the complaint does not contain allegations explaining how the trial's rescheduling did not give Spillane enough time to prepare a defense.  *Id.*  Spillane's argument that the trial "was scheduled for a time when it was known he would be away" does not cure these deficiencies.  Pls. Union Opp. at 13.

Third, the complaint undermines Spillane's arguments that he was not afforded a full and fair hearing under LMRDA § 101(a)(5)(C).  "Courts should intervene in union disciplinary actions under [§] 101(a)(5) only if there has been a breach of fundamental fairness." *Piacente*, 2015 WL 5730095, at *14 (quotation marks and citation omitted).  Spillane asserts that the Union did not present any evidence against him at trial. *See, e.g.*, Pls. Union Opp. at 6–7.  The

---

[10] The Court considers the charge form, which Plaintiffs attached as an exhibit to their opposition to the Union Defendants' motion to dismiss, as integral to the complaint. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

13

complaint, however, describes witness testimony and other evidence that was presented at trial. *See, e.g.*, Am. Compl. ¶¶ 82–91. "[A] charging party need only provide 'some evidence' to support the charges." *Nunes v. United Bhd. of Carpenters & Joiners of Am.*, No. 20 Civ. 1092, 2020 WL 9256554, at *6 (S.D.N.Y. Oct. 23, 2020) (citation omitted), *report and recommendation adopted*, 2021 WL 1172625 (S.D.N.Y. Mar. 29, 2021).

Although Spillane does not raise this in his opposition papers, the complaint alleges that the Union Trial proceeded without Spillane. Am. Compl. ¶¶ 29, 77. Spillane's allegation raises the question of whether he was afforded the opportunity to exercise his right to confront and cross-examine witnesses. *Schermerhorn v. Local 100, Transport Workers Union of Am.*, No. 93 Civ. 6686, 1995 WL 677092, at *5 (S.D.N.Y. Aug. 17, 1995). This potential "failure . . . to afford [Spillane] a 'full and fair hearing' is not necessarily fatal" because these rights can be waived. *Id.* (citations omitted). But, on this record, the Court cannot conclude that Spillane waived his rights.

Even if the Court found that the complaint stated a claim under LMRDA § 101(a)(5)(C), Spillane failed to exhaust internal union remedies prior to filing this LMRDA suit. Am. Compl. ¶ 103–04; LMRDA § 101(a)(4), 29 U.S.C. § 411(a)(4); *Paulino v. N.Y. Printing Pressman's Union, Local Two*, 301 F. App'x 34, 38 (2d Cir. 2008) ("The requirement that a plaintiff exhaust internal union remedies under the LMRDA lies within the court's discretion." (citation omitted)). Plaintiffs allege that it would have been futile to exhaust "either [Union] or Fund[s] internal remedies." Am. Compl. ¶ 117. However, the complaint does not establish that exhausting internal union remedies would have been futile. *Id.* ¶¶ 118–29 (describing a separate Union member case that was retried after a successful appeal); *see also* Pls. Union Opp. at 13.[11]

---

[11] In their opposition to the Union Defendants' motion to dismiss, Plaintiffs assert that the Union Trial committee was biased. Pls. Union Opp. at 11–12. Plaintiffs' arguments are not properly before the Court because the

14

Accordingly, the Union Defendants' motion to dismiss Spillane's LMRDA Claims for failure to state a claim is GRANTED.

### D. Prima Facie Tort

Because the Court dismisses Plaintiffs' federal claims under Rule 12(b)(6), the Court declines to exercise supplemental jurisdiction over Spillane's state law prima facie tort claim. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (stating that, where "all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . point toward [a federal court] declining to exercise jurisdiction over the remaining state-law claims"); *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (Calabresi, J., concurring).

Accordingly, the Union Defendants' motion to dismiss Spillane's prima facie tort claim for failure to state a claim is DENIED.

### III. Leave to Amend

Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a). However, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Where amendment would be futile, denial of leave to amend is proper. *Foman v. Davis*, 371 U.S. 178, 182 (1962). An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6). *Lucente v. I.B.M. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). Motions to amend are also governed by Rule 16(b), which states that a court-ordered schedule "may be modified only for good cause

---

complaint does not contain allegations of bias. Accordingly, the Court shall not address that argument. To the extent that Plaintiffs' allegations that the Union Trial was "rigged," Am. Compl. ¶ 120, and run by "Geiger's crony tree," *id.* ¶ 81, can be read as allegations of bias, the allegations are speculative. *Twombly*, 550 U.S. at 555.

15

and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  "Where, as here, a motion to amend is not 'timely filed under the scheduling order in place in the action,' in addition to meeting the requirements of Rule 15, the moving party 'must also show good cause for the amendment under Rule 16.'"  *Redcell Corp. v. A.J. Trucco, Inc.*, No. 20 Civ. 18, 2022 WL 683007, at *3 (S.D.N.Y. Mar. 8, 2022) (citation and alterations omitted); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 243 (2d Cir. 2007) ("Under Rule 16(b), a party may obtain a modification of the scheduling order only 'upon a showing of good cause.'").

Plaintiffs concede that their motion for leave to file a second amended complaint is untimely.  ECF No. 66 at 1–3.  Plaintiffs argue that they should nonetheless be allowed to amend the complaint to allege that Spillane "never . . . subscribed to the [o]bligation under the [UBC] . . . [c]onstitution, [§] 44" (the "Oath").  *Id.* at 1.  Plaintiffs contend that, because Spillane "had not taken the Oath at the time he was admitted to [the Union] or any time thereafter," he could not have been "charged and convicted . . . of violating the Oath."  *Id.* at 1, 5–6.  Plaintiffs' counsel states that it was brought to his attention "at the beginning of this past April" "that carpenters routinely were permitted to join the [Union] without orally taking the [O]ath when Spillane joined [the Union thirty-five] years ago," and that he was not aware that Spillane had not taken the Oath orally until April 20, 2022, after Spillane was deposed for this matter.  *Id.* at 1–2.  The parties dispute whether Spillane signed documents containing the Oath.  *Id.* at 6.  Plaintiffs assert that "convicting Spillane of . . . violating an oath he never took would be a breach of fundamental fairness under LMRDA or any standard."  *Id.* at 8.

Plaintiffs have failed to show good cause under Rule 16(b).  Plaintiffs' proposed amendment would also be futile because it has no bearing on their ERISA claims against the Fund Defendants, and would not withstand a motion to dismiss from the Union Defendants.

"[A] union may discipline its members for offenses not proscribed by written rules at all." *Hardeman*, 401 U.S. at 244. Spillane's reliance on the oral Oath is misplaced. Here, "there is . . . no indication that a valid claim might be stated if given a second chance." *Al-Qadaffi v. Servs. for Underserved (SUS)*, No. 13 Civ. 8193, 2015 WL 585801, at *8 (S.D.N.Y. Jan. 30, 2015). Accordingly, Plaintiffs' motion to amend the complaint is DENIED.

## CONCLUSION

For the reasons stated above, the Fund Defendants' motion to dismiss is GRANTED as to Plaintiffs' denial of benefits claim under ERISA § 502(a)(1)(B) and Plaintiffs' breach of fiduciary duty claim under ERISA § 502(a)(3), and the Union Defendants' motion to dismiss is GRANTED as to Spillane's LMRDA Claims, and DENIED as to Spillane's prima facie tort claim. Plaintiffs' request to amend the complaint is DENIED. Plaintiffs' claims are, therefore, DISMISSED.

The Clerk of Court is directed to terminate the motions at ECF Nos. 36, 39, and 64.

SO ORDERED.

Dated: January 3, 2023
New York, New York

_____
ANALISA TORRES
United States District Judge